[Cite as *Lyons v. Teamhealth Midwest Cleveland*, 2011-Ohio-5501.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96336**

# TAMMY M. LYONS, INDIVIDUALLY, ETC., ET AL.

PLAINTIFFS-APPELLEES

vs.

# TEAMHEALTH MIDWEST CLEVELAND, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-725903

**BEFORE:** Sweeney, J., Blackmon, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**     October 27, 2011

**ATTORNEYS FOR APPELLANTS**

John T. McLandrich, Esq.
Frank H. Scialdone, Esq.
Mazanec, Raskin & Ryder Co., L.P.A.
100 Franklin's Row
34305 Solon Road
Solon, Ohio 44139

**ATTORNEYS FOR APPELLEES**

James M. Kelley, III, Esq.
Elk & Elk Co., L.P.A.
6110 Parkland Blvd.
Mayfield Heights, Ohio 44124

Paul W. Flowers, Esq.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio 44113

Jonathan W. Philipp, Esq.
5005 Rockside Road, Suite 600
Independence, Ohio 44131

Christopher J. Baronzzi, Esq.
Shirley J. Christian, Esq.
Harrington, Hoppe & Mitchell, Ltd.
2235 E. Pershing Street, Suite A
Salem, Ohio 44460

Stacy A. Ragon Delgros, Esq.
Roetzel & Andress, L.P.A.
222 South Main Street
Akron, Ohio 44308

(Continued)


(Continued)

Dirk E. Riemenschneider, Esq.
Timothy A. Spirko, Esq.
Buckingham, Doolittle & Burroughs
1375 East Ninth Street, Suite 1700
Cleveland, Ohio 44114


JAMES J. SWEENEY, J.:

{¶ 1} Defendants-appellants, Columbiana County, Matthew Jones ("Jones"), and Crystal Sickelsmith ("Sickelsmith"), appeal the trial court's denial of their motion for summary judgment seeking dismissal of plaintiff's-appellee's, Tammy M. Lyons, claims against them pursuant to the immunity conferred by R.C. Chapter 2744. An order that denies a political subdivision immunity under R.C. Chapter 2744 is a final, appealable order. R.C. 2744.02(C); *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, syllabus.[1]

{¶ 2} For the reasons that follow, we affirm in part and reverse in part and remand for further proceedings. For purposes of summary judgment, we must construe the facts in the light most favorable to the non-moving party, appellee.

{¶ 3} On November 14, 2008, eight year old Tyler J. Miller ("decedent") died after suffering breathing problems and a fever that led to cardiac arrest. Appellee Lyons

---

[1] The trial court's denial of defendant KLG Mobile Intensive Co., LLC's motion for summary judgment did not constitute a final, appealable order and is not at          issue          in          this          appeal.

is his mother. Lyons and decedent were living in an apartment in Lisbon, Ohio. On the evening of November 13, 2008, decedent was sleeping in Lyons's bed due to an on-going illness. At 5:16 a.m. on November 14, 2008, Lyons called for help using her cellular phone. Defendant Jones, a dispatcher employed by the Columbiana County Sheriff's department, received the call on the non-emergency line.[2] At that time Jones had been working as a dispatcher for about two months. His training involved reviewing the policy manual but most of it was hands on, watching the other dispatchers. Jones said he received most of his training from defendant Sickelsmith who was on the calls with him the first few weeks.

{¶ 4} Both Jones and Sickelsmith testified that their job duties included taking emergency medical calls. Both confirmed that a primary function of the job was to gather information, one of the critical pieces of information being the address of the emergency. Jones testified he was trained to obtain the city as part of the address and if someone did not tell him the city, it would be his job to ask for it.

{¶ 5} Lyons requested ambulance service to her residence. Jones obtained the address of 6181 Allen Drive and was told it was off Lisbon-Canfield Road. Jones testified that he grew up in Columbiana County but was not familiar with the streets in Lisbon. Columbiana County did not have an ambulance service and contracted with private companies, including defendant KLG, to respond to emergency calls in the

---

[2]Although the department had an enhanced 911 system, the dispatchers stated that it automatically plotted only calls that came in through land lines.

jurisdiction. Jones said it was his choice which of two ambulance services to contact to respond to Lyons's call. He decided to contact KLG. According to Jones, he was not able to directly connect Lyons to KLG and thought it would be faster if he just relayed the information to KLG himself. Jones called KLG within a minute. He provided the KLG dispatcher with the correct house number and street address, he provided the cross roads of Lisbon-Canfield Road, and he provided Lyons's callback number. KLG had squads located in Lisbon and Salem. Jones did not recall if the KLG dispatcher asked him, but he did advise her that he thought the Allen Drive address was closer to Perry Township.

{¶ 6} Cara Fidoe ("Fidoe") was the KLG dispatcher who received Jones's call regarding the Lyons' emergency. Based on Jones's advice that he thought the address was closer to Perry, Fidoe dispatched the Salem squad rather than the Lisbon squad. Without dispute, the Lisbon squad was closer to Lyons's residence. The KLG transcripts provide the following exchange between Jones and Fidoe:

{¶ 7} "KLG: That's 6181 Allen Drive. And that's Lisbon?

{¶ 8} "Sheriff's office: It's off of Lisbon/Canfield Road. I guess it's closer to Perry Township."

{¶ 9} "KLG: So Salem. Off of Lisbon/Canfield you said?

{¶ 10} "Sheriff's office: Yeah.

{¶ 11} "KLG: And do you have a callback number?

{¶ 12} "Sheriff's office: Yeah. [Phone number is provided]."

{¶ 13} Fidoe testified that if Jones had said he did not know where the address was located, she would have diligently found out before dispatching a squad. Jones acknowledged that he "kind of" knew that his comment about where he thought the address was located would be used by KLG to determine which squad was going to be dispatched. Complicating matters further, there is, in fact, an Allen Drive located in Perry Township, which is where the squad went. The squad was unable to find the correct house number on the Allen Drive located in Perry Township. When the squad called for clarification, Fidoe was asked if the Sheriff's office gave the address to her as Perry Township, to which she first responded "Hm-hmm." Then she explained, "I said, 'Is that Salem or Lisbon?' And he [Jones] said, Perry Township — no. He [Jones] said, 'I think it's closer to Perry Township.'"

{¶ 14} All of the dispatchers testified that you should not guess at any information being used to respond in an emergency situation.

{¶ 15} Sickelsmith became involved when she placed a separate call to KLG regarding another medical emergency on McSwiggen Road. During that call, she overheard KLG's Salem squad in the background struggling to locate the Allen Drive address. Sickelsmith took it upon herself to look it up on the paper map in her office and discovered that it was in Lisbon, Ohio.[3] Sickelsmith called KLG to provide this

---

[3]Incidentally, the paper map designated the street as being Allen Avenue, which the record indicates is not correct. Jones said the map was created by the Columbiana County Engineer's office.

information at 5:31 a.m. In the meantime, she tried to find other first responders in the Lisbon area without success. Around the same time, Fidoe's supervisor called her cell phone and advised her that there was an Allen Drive in Lisbon, Ohio.[4] Fidoe said she typically used Google maps to locate addresses but could not recall what she did in response to this emergency.

{¶ 16} By the time Fidoe was informed that 6181 Allen Drive was in Lisbon, she had already dispatched the Lisbon squad to McSwiggen Road and believed she could not re-route them. At 5:34 a.m. decedent's father called the Sheriff's department again to advise that the child was not breathing and they were doing CPR. Jones did not seek any clarification of the Lyons' address when decedent's father had called. Sickelsmith called KLG to update them on the child's condition at 5:35 a.m. KLG never used the call back number to find out the city where the Lyons' residence was located. At 5:37 a.m., Sickelsmith made another call. Jones stated that despite their efforts, neither he nor Sickelsmith were able to obtain an estimated time of arrival of the ambulance from KLG. Decedent's father called again at 5:41 a.m. Sickelsmith contacted the family again at 5:43 a.m. and remained on the line until the ambulance arrived. The child died and appellee commenced this wrongful death action against numerous parties. The only issue before us in this appeal is whether the trial court erred by denying Jones, Sickelsmith, and Columbiana County's motion for summary judgment that asserted statutory immunity in

---

[4] The supervisor heard the confusion on a radio at her home.

relation to appellee's claims. We address the assignments of error together for ease of discussion.

{¶ 17} "I. The lower court erred by denying the Appellant Columbiana County's Motion for Summary Judgment because the County is immune under R.C. 2744.02(A)."

{¶ 18} "II. The lower court erred by denying the Appellant Columbiana County's Motion for Summary Judgment because the County is immune under R.C. 2744.03(A)(3) and (5)."

{¶ 19} "III. The lower court erred by denying the Appellant Crystal Sickelsmith's Motion for Summary Judgment because she is immune under R.C. 2744.03(A)(6)(b).

{¶ 20} "IV. The lower court erred by denying the Appellant Mathew Jones' Motion for Summary Judgment because he is immune under R.C. 2744.03(A)(6)(b)."

{¶ 21} "A court of appeals must exercise jurisdiction over an appeal of a trial court's decision overruling a Civ.R. 56(C) motion for summary judgment in which a political subdivision or its employee seeks immunity." *Hubbell*, 2007-Ohio-4839, ¶21. We review a summary judgment decision de novo and must construe the facts in a light most favorable to the non-moving party, which, in this case, would be the appellees. Civ.R. 56.

{¶ 22} The three-tier analysis that governs the application of sovereign immunity to a political subdivision pursuant to Chapter 2744 of the Ohio Revised Code, is set forth in *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9,

¶14-16, quoting *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶7-9:

{¶ 23} "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B) * * *.

{¶ 24} "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *

{¶ 25} "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability." (Internal citations omitted.)

{¶ 26} "For the individual employees of political subdivisions, the analysis of immunity differs. Instead of the three-tiered analysis * * *, R.C. 2744.03(A)(6) states that an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities, the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or

liability is expressly imposed upon the employee by a section of the Revised Code."
*Cramer v. Auglaize Acres*, 113 Ohio St.3d 266.

{¶ 27} Columbiana County is a political subdivision and both Jones and Sickelsmith were employed as dispatchers in the Sheriff's department on November 14, 2008 when Tyler J. Miller suffered respiratory failure and died while awaiting an ambulance transport to the hospital.

{¶ 28} The first point of contention is whether the County's act of providing dispatch services in response to calls of medical emergencies involves a governmental or proprietary function. The County asserts it is a governmental function and appellee maintains it is a proprietary function.

{¶ 29} R.C. 2744.02(A)(1) provides:

{¶ 30} "For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. *Except as provided in division (B) of this section*, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." (Emphasis added.)

{¶ 31} Appellee relies on the exception set forth in R.C. 2744.02(B)(2) to support her contention that the trial court properly denied Columbiana County's motion for summary judgment. That exception provides:

{¶ 32} "Except as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."

{¶ 33} The exception upon which appellee relies pertains only to the performance of proprietary functions and does not apply to the performance of governmental functions.

{¶ 34} In urging us to conclude that the County's provision of dispatch services was a proprietary function, appellee suggests that appellants were doing nothing more than forwarding emergency calls to a private ambulance service. She cites to *Greene Cty. Agr. Soc. v. Liming*, 89 Ohio St.3d 551, 2000-Ohio-486, 733 N.E.2d 1141, and maintains that the analysis depends on whether the particular activity engaged in is the type customarily performed by non-governmental persons. If so, appellee maintains it should deemed a proprietary function. In *Greene*, the court distinguished the act of holding a county fair (which is a governmental function) from conducting a livestock competition at the fair, which it found had "nothing inherently governmental" about it.

{¶ 35} Appellee frames the function at issue in this case as being one of "relaying * * * Plaintiff's request for immediate medical assistance to the private ambulance company." And, appellee believes the County's provision of dispatch services should be carved out of the established governmental function that includes "the provision or non-provision of police, fire, emergency medical, ambulance, and rescue services or

protection" because the County contracted with a private entity to provide the actual transportation service.

**{¶ 36}** Appellee argues this interpretation is supported by the fact that dispatching services are not specifically designated in the itemized list of governmental functions set forth in R.C. 2744.01(C)(2). In response, the County argues that its provision of dispatch services is a governmental function pursuant to both R.C. 2744.01(C)(1)(a)-(c) and R.C. 2744.01(C)(2)(a). As such it contends that there is no exception to its immunity pursuant to R.C. 2744.02(A) & (B).

**{¶ 37}** R.C. 2744.01(C)(1) provides:

**{¶ 38}** "(C)(1) 'Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section *or that satisfies any of the following*:

**{¶ 39}** "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

**{¶ 40}** "(b) A function that is for the common good of all citizens of the state;

**{¶ 41}** "(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function." (Emphasis added.)

**{¶ 42}** According to the express terms of the statute, conduct can constitute a governmental function despite the fact that it is not specifically enumerated in R.C.

2744.01(C)(2). The provision of dispatch services clearly is a function that is for the common good of all citizens of the state and it further satisfies the conditions described in R.C. 2744.01(C)(1)(c).

{¶ 43} While dispatching services is not explicitly designated as either a proprietary or governmental function, R.C. 2744.01(C)(2)(a) provides that a governmental function includes, but is not limited to, the following:

{¶ 44} "(a) The provision or nonprovision of police, fire, emergency medical, ambulance, and rescue services or protection."

{¶ 45} It is undisputed that if the County provided its own ambulance service, the dispatcher's involvement in facilitating that service would be considered a governmental function. In this case, however, we are examining a situation where the County has contracted with private entities to provide ambulance services that will incidentally profit from the provision of ambulance services in the jurisdiction. Our analysis focuses on whether the County can maintain their statutory immunity for retaining limited involvement in communicating the calls for emergency help to the private entity through the provision of dispatch services.

{¶ 46} This court has previously held that "R.C. 2744.01(C) does not exclude from the definition of governmental functions those functions sometimes performed by private entities for political subdivisions. In fact, many of the specifically enumerated governmental functions set forth in R.C. 2744.01(C)(1) are commonly performed by private entities for political subdivisions, including, but not limited to, ambulance

services, ***.  Where a service is specifically defined as a governmental function, what entity actually performs them *or a part of them* on behalf of a political subdivision has no bearing on their status as governmental pursuant to R.C. 2744.01(C)(1)." *McCloud v. Nimmer* (1991), 72 Ohio App.3d 533, 595 N.E.2d 492, emphasis added.

{¶ 47} The Columbiana County Sheriff  Department's dispatch service, which aids in responding to emergency medical calls, is an integral part of the provision or nonprovision of police, fire, emergency medical, ambulance and rescue services or protection that is a clearly delineated governmental function. R.C. 2744.01(C)(2)(a); see, also, R.C. 2744.01(C)(1)(a)-(c). Under the existing precedent in this district, the fact that the County contracted with private companies to provide the ambulance transportation does not transform its involvement in dispatching those services into a proprietary function.  The County Sheriff's provision of dispatch services is not something that is typically or customarily performed by non-governmental entities.

{¶ 48} The first tier of the analysis is satisfied.

{¶ 49} Because the County dispatchers were performing a governmental function and the sole exception to immunity under R.C. 2744.02(B) upon which appellee relies involves the performance of a proprietary function, appellee has not satisfied the second tier of the immunity analysis.  The first assignment of error is sustained, which renders the second assignment of error moot.

{¶ 50} In the remaining assignments of error, appellants contend that the trial court erred by denying Jones and Sickelsmith summary judgment. Jones and Sickelsmith

contend they were also immune from liability. Appellant maintains the trial court correctly denied the county employees' motions for summary judgment because, she asserts, there remained genuine issues of material fact as to whether Jones and Sickelsmith should be held liable for reckless or wanton conduct pursuant to R.C. 2744.03(A)(6), which provides:

{¶ 51} "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

{¶ 52} "* * *

{¶ 53} "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

{¶ 54} "***

{¶ 55} "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 56} Although the law provides that political subdivision employees may be sued individually as set forth above, the political subdivision remains obligated to indemnify and defend its employees pursuant to the terms of R.C. 2744.07.

**{¶ 57}** Appellant does not contend that either Jones or Sickelsmith acted with malicious purpose or in bad faith, and the evidence establishes as a matter of law that they did not. The issue is whether Jones or Sickelsmith or both engaged in reckless or wanton conduct under the factual scenario that has been developed in this case.

**{¶ 58}** In *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, the Ohio Supreme Court addressed what constitutes reckless conduct for purposes of statutory political subdivision immunity:

**{¶ 59}** "[A]n actor's conduct 'is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.' * * * Distilled to its essense, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk." Id. at ¶73.

**{¶ 60}** "Recklessness, therefore, necessarily requires something more than mere negligence. * * * In fact, 'the actor must be conscious that his conduct will in all probability result in injury.'" "Id. at ¶74; see, also, *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, ¶37. Unless the individual's conduct does not demonstrate a disposition to perversity as a matter of law, the determination of recklessness is within the province of the jury. *O'Toole*, 2008-Ohio-2574, ¶75.

**{¶ 61}** " 'Wanton conduct' involves failure to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result." *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 1996-Ohio-137, 662 N.E.2d 287. The term "implies intent relating to misconduct rather than relating to result, so that intent to injure need not be shown." *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 605 N.E.2d 445.

**{¶ 62}** "In contrast, 'willful misconduct' involves a more positive mental state prompting the injurious act than wanton misconduct, but the intention relates to the misconduct, not the result. Id. Consequently, 'willful misconduct' is defined as: 'an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing some wrongful acts with knowledge or appreciation of the likelihood of resulting injury.'" *Fogle v. Village of Bentleyville*, Cuyahoga App. No. 88375, 2008-Ohio-3660, ¶47, quoting *Whitfield v. Dayton*, 167 Ohio App.3d 172, 2006-Ohio-2917, 854 N.E.2d 532, quoting *Brockman*, supra.

**{¶ 63}** Construing the evidence in a light most favorable to appellee, there is no evidence from which a reasonable mind could conclude that Sickelsmith's actions were either wanton or reckless. Appellee asserts that "questions exist * * * as to whether [Sickelsmith] did all she could to alert KLG of the Plaintiff's true location and ensure that the closest available ambulance was immediately dispatched." Appellee also asserts that

Sickelsmith should be "faulted for allowing an untrained, novice co-worker to field such a critical emergency call." The question is not whether Sickelsmith was negligent. The appropriate inquiry is whether she was wanton or reckless in this instance and we find, as a matter of law, that she was not. All of the evidence in the record establishes that Sickelsmith acted diligently towards getting KLG to the proper address as soon as possible. As for the allegation that Sickelsmith was negligent for "allowing" Jones to field critical emergency calls, Jones was employed by the Sheriff's department as a dispatcher. That was his job. There is no evidence that Sickelsmith had the authority or discretion to prevent Jones from doing it. Further, Appellee's call came in through the non-emergency lines; there is no way Sickelsmith could have known the nature of Lyons's call as it came in such that she could have intercepted it from Jones. There is no evidence from which reasonable minds could conclude that Sickelsmith was either wanton or reckless, and, therefore, she was entitled to summary judgment on the basis of immunity. The third assignment of error is sustained.

{¶ 64} However, reasonable minds could reach differing conclusions as to whether Jones's acts or omissions qualified as being reckless. Jones said he was trained to get the address of the emergency that included the city. Jones admittedly did not obtain the city from the caller. When the KLG dispatcher inquired if it was located in Lisbon, Jones said, "[i]t's off of Lisbon/Canfield Road. I guess it's closer to Perry Township." Although that was the proper cross road (which according to the record is located in Lisbon) and Jones did provide KLG with the correct call back number for appellee, his guess that it was

closer to Perry Township was wrong. All of the dispatchers testified that they should not guess at information. KLG had squads located in two areas: Salem and Lisbon. Jones said he "kind of" knew that the location of the emergency would determine which squad was dispatched. KLG's dispatcher said she felt confident that Jones "was confident in what he was telling [her]" and dispatched the Salem squad instead of the Lisbon squad. Whether that was reasonable, negligent, reckless, and/or whether it contributed to or superceded any act or omission by Jones, are not questions that are before us here. This convergence of circumstances led to the dispatch of an ambulance squad that could not readily locate the address; because it was not closer to Perry but was, in fact, in Lisbon. Tragically, the child suffered cardiac arrest while awaiting ambulance transport and died. KLG's dispatcher testified that if Jones had said he did not know the city where the address was located she would have "diligently found out." There is a question of fact as to whether Matthew Jones was reckless or not. The fourth assignment of error is overruled.

Judgment affirmed in part and reversed in part.

It is ordered that appellees and appellants split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, JUDGE

PATRICIA ANN BLACKMON, P.J., and
EILEEN A. GALLAGHER, J., CONCUR