[Cite as *Woollacott v. Andreas*, 2014-Ohio-1079.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100168**

# DONNA WOOLLACOTT, ET AL.

PLAINTIFFS-APPELLEES

vs.

# BRIAN ANDREAS, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-783243

**BEFORE:** Kilbane, J., Jones, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 20, 2014

**ATTORNEYS FOR APPELLANTS**

Michael E. Cicero
Vincent A. Feudo
Nicola, Gudbranson & Cooper
1400 Republic Building
25 West Prospect Avenue
Cleveland, Ohio 44115

John J. Montello
Law Director
City of Maple Heights
5353 Lee Road
Maple Heights, Ohio 44137

**ATTORNEYS FOR APPELLEES**

Egan P. Kilbane
Kimberly C. Young
Elk & Elk Co., Ltd.
6105 Parkland Boulevard
Mayfield Heights, Ohio    44124

MARY EILEEN KILBANE, J.:

{¶1}   Defendant-appellant, Vicki Anderson ("Anderson"), a dispatcher with the city of Maple Heights, appeals from the order of the trial court that denied her motion for summary judgment in a wrongful death action filed by plaintiff-appellee, Donna Woollacott ("plaintiff"), in connection with the death of her husband, John Woollacott ("Woollacott").   Anderson assigns the following error for our review:

I.   The trial court erred in denying Appellant Vicki Anderson's motion for summary judgment on the issue of immunity pursuant to O.R.C. Chapter 2744.

{¶2} Having reviewed the record, we agree with the trial court's finding that Anderson is not entitled to judgment as a matter of law, therefore, we affirm.

{¶3}   In the early morning hours of May 23, 2010, 59-year-old Woollacott experienced difficulty breathing.   At 1:48 a.m., plaintiff dialed 911 and requested emergency assistance.   She provided her Maple Heights address to the dispatcher, trainee Brian Andreas ("Andreas"), who was under the supervision of Anderson.   At the time of this call, all of the Maple Heights rescue squads were out on other calls, but other "first responders" were available.   Anderson logged onto a computer and retrieved an email regarding recent amendments to the city's standard operating procedure for requesting mutual aid from other communities.   Anderson interpreted the email to authorize the dispatcher to make the decision as to which community to call for mutual aid in requesting a rescue squad.   In reality, however, the information provided in the email had no bearing on the situation at hand, and in conformance with the city's actual procedure, Anderson should have requested that another first responder go to the scene, and then,

with the assistance of the Mutual Aid Box Alarm System ("MABAS"), determine which community to call for mutual assistance.

{¶4} To request mutual aid, Andreas dialed a telephone number provided by Anderson, which Anderson believed to be the neighboring Garfield Heights Fire Department. In actuality, Anderson provided the telephone number for the Warrensville Heights Fire Department.

{¶5} After six minutes from plaintiff's initial call, assistance had not arrived, so plaintiff placed a second 911 call at 1:54 a.m. In response to the second call, Andreas, at the direction of Anderson, called the Maple Heights Fire Station 2 to request assistance for Woollacott. He also called the Garfield Heights Fire Department to follow-up on his earlier call for mutual aid. During this call, Andreas learned that the first call for mutual aid did not reach the Garfield Heights Fire Department.

{¶6} Engine No. 2, sent from the Maple Heights Fire Station 2, reached Woollacott at 1:58 a.m. At that point, Woollacott was unresponsive. He was wedged between a doorway, and the firefighters could not move him. They gave Woollacott CPR and attached a heart AED. At 2:00 a.m., Engine No. 2 advised Maple Heights Dispatch to request any and all Maple Heights equipment to assist and to inform the Garfield Heights Fire Department of a full cardiac arrest. In response to this call, Garfield Heights dispatchers stated that they did not have a squad en route to Maple Heights, and following further conversation with Anderson, dispatched a rescue squad at 2:02 a.m. At 2:08, the Warrensville Heights rescue squad arrived on the scene.

Woollacott was transferred from his home at 2:23 a.m., and arrived at Marymount Hospital at 2:28 a.m. At 2:52 a.m., he was pronounced dead.

{¶7} On May 22, 2012, plaintiff filed this action against the city of Maple Heights and various defendants. On August 21, 2012, the trial court determined Maple Heights to be entitled to sovereign immunity in connection with this matter, and it granted the city's motion to dismiss.

{¶8} On October 19, 2012, plaintiff filed an amended complaint against the Maple Heights fire chief, Andreas, and Anderson. Plaintiff maintained that Maple Heights Fire Station 2 is less than one-half mile away from her home, and that if properly summoned, it would have reached Woollacott in approximately two minutes. Plaintiff alleged that the dispatchers engaged in willful, wanton, and/or reckless misconduct in handling the 911 call. She set forth claims for wrongful death and survivorship, infliction of emotional distress, and failure to train. Andreas and the fire chief were subsequently dismissed from the action, and the matter remained pending solely against Anderson.

{¶9} On March 27, 2013, Anderson moved for summary judgment, asserting that she is entitled to sovereign immunity under R.C. 2744.03(A)(6). In opposition, plaintiff asserted that Anderson acted recklessly by: (1) taking no action during the four minute period in which she reviewed emails regarding appropriate protocols; (2) failing to immediately dispatch a first responder to Woollacott; (3) giving Andreas the wrong

telephone number to call for mutual aid; (4) stopping Andreas from obtaining the correct

number; and (5) failing to consult the MABAS system for mutual aid.

**{¶10}** On July 23, 2013, the trial court denied Anderson's motion for summary

judgment in a seven-page opinion.   Anderson now appeals.[1]

Summary Judgment

**{¶11}** This court reviews a trial court's decision on summary judgment under a de

novo standard of review.   *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105,

1996-Ohio-336, 671 N.E.2d 241; *Mitnaul v. Fairmount Presbyterian Church*, 149 Ohio

App.3d 769, 2002-Ohio-5833, 778 N.E.2d 1093 (8th Dist.).

**{¶12}** Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the
moving party is entitled to judgment as a matter of law; and (3) it appears
from the evidence that reasonable minds can come to but one conclusion,
and viewing such evidence most strongly in favor of the party against whom
the motion for summary judgment is made, that conclusion is adverse to
that party.

*Temple v. Wean United, Inc*., 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶13}** Once a moving party satisfies its burden of supporting its motion for

summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), the

nonmoving party must set forth specific facts demonstrating that a "genuine triable issue"

---

[1]The denial of a motion to dismiss on sovereign immunity grounds is a final
appealable order.   *Lowery v. Cleveland*, 8th Dist. Cuyahoga No. 90246,
2008-Ohio-132, ¶ 4; R.C. 2744.02(C).

exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 1996-Ohio-211, 663 N.E.2d 639.

Sovereign Immunity

{¶14} A three-tier analysis governs the application of sovereign immunity to a political subdivision pursuant to Chapter 2744 of the Ohio Revised Code. *See Cramer v. Auglaize Acres,* 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 14-16; *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7-9.

{¶15} Immunity is also extended to individual employees of political subdivisions. R.C. 2744.03(A)(6); *Cramer* at ¶ 17. Pursuant to this statute, an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities, the employee's acts or omissions were malicious, in bad faith, or wanton or reckless, or liability is expressly imposed upon the employee by a section of the Revised Code. *Id.*

{¶16} In *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 32-34, the Ohio Supreme Court defined the terms "willful, wanton, and reckless conduct" for purposes of the sovereign immunity statutes, and stated:

> Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury. *Tighe v. Diamond*, 149 Ohio St. [520], 527, 80 N.E.2d 122 [(1948)]; *see also* Black's Law Dictionary 1630 (8th Ed.2004) (describing willful conduct as the voluntary or intentional violation or disregard of a known legal duty).
>
> Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great

probability that harm will result. *Hawkins* [*v. Ivy*, 50 Ohio St.2d 114, 117-118, 363 N.E.2d 367 (1977)]; *see also* Black's Law Dictionary 1613-1614 (8th Ed.2004) (explaining that one acting in a wanton manner is aware of the risk of the conduct but is not trying to avoid it and is indifferent to whether harm results).

Reckless conduct is characterized by the conscious disregard of or

indifference to a known or obvious risk of harm to another that is

unreasonable under the circumstances and is substantially greater than

negligent conduct. *Thompson* [*v. McNeill,* 53 Ohio St.3d 102, 559 N.E.2d

705 (1990),] adopting 2 Restatement of the Law 2d, Torts, at 587 (1965);

*see also* Black's Law Dictionary 1298-1299 (8th Ed.2004) (explaining that

reckless conduct is characterized by a substantial and unjustifiable risk of

harm to others and a conscious disregard of or indifference to the risk, but

the actor does not desire harm).

*Accord O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶

73-75. In *O'Toole*, the Ohio Supreme Court defined reckless conduct for purposes of

statutory political subdivision immunity and stated:

> An actor's conduct "is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." [*Thompson v. McNeill*, 53 Ohio St.3d 102, 105-106, 559 N.E.2d 705 (1990)],quoting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965). Distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk.

Recklessness, therefore, necessarily requires something more than mere negligence. [*Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356, 1994-Ohio-368, 639 N.E.2d 31]. In fact, "the actor must be conscious that his conduct will in all probability result in injury."

*Accord Lyons v. Teamhealth Midwest Cleveland*, 8th Dist. Cuyahoga No. 96336, 2011-Ohio-5501, ¶ 61-62.

{¶17} With regard to the failure to follow departmental policies, the *Anderson* court explained that "it is well established that the violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct, but may be relevant to determining the culpability of a course of conduct." *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 37, quoting 2 Restatement of the Law 2d, Torts, Section 500, at 587, comment e (1965). The court observed at ¶ 38 that:

In order that the breach of [a] statute constitute reckless disregard for the safety of those for whose protection it is enacted, the statute must not only be intentionally violated, but the precautions required must be such that their omission will be recognized as involving a high degree of probability that serious harm will result.

{¶18} In *Lyons,* the dispatcher's confusion over the location of a residential address and an incorrect map prepared by the county engineer's office, resulted in a delay in the arrival of an ambulance, and a minor in need of medical attention died. In affirming the denial of summary judgment, this court concluded that a jury question was presented regarding the issue of the dispatcher's recklessness. *Id*. at ¶ 64.

{¶19} In this matter, Anderson's motion for summary judgment states that at 1:48 a.m., plaintiff made the first call for assistance and Anderson consulted her materials,

albeit incorrectly, and made the decision to call for mutual aid rather than requesting aid from a two-man fire engine with only basic life-saving equipment. Through inadvertence, she gave the trainee the telephone number for Warrensville Heights, rather than Garfield Heights, and that Warrensville Heights did not identify itself when receiving that call. A report conducted by the communications supervisor, Kelly Brown ("Brown"), concluded that at the time of plaintiff's first 911 call, equipment and firefighters assigned to Station 1 were dispatched to a motor vehicle accident. Rescue Squad 2 and the firefighters assigned to that unit were assigned to a squad call. At 1:54 a.m., Andreas received plaintiff's second call. At that point, Anderson determined that Garfield Heights was the closest available department to call for mutual aid, but through inadvertence, gave Andreas the telephone number for the Warrensville Heights Fire Department. After obtaining this incorrect phone number from Anderson, Andreas requested mutual aid from Warrensville Heights.

{¶20} Warrensville Heights accepted the mutual aid call and dispatched a squad, and at 1:54 a.m. Anderson advised the officer-in-charge that Garfield Heights was responding. The officer-in-charge instructed Anderson to send Maple Heights Engine 2 as a first responder, and at 1:58 a.m., Engine 2 was called out. Brown's report acknowledged that Anderson erred by failing to follow the standard operating procedure regarding sending a first responder before requesting mutual aid. She also failed to follow procedures in obtaining mutual aid. According to Brown's report, however, the error did not add to the delay in obtaining mutual aid.

**{¶21}** Anderson established that the Warrensville Heights squad arrived at 2:08 a.m. She also submitted the testimony from firefighter Dave Gustley who stated that it took a total of six people to move Woollacott because of his size and the position in which he was lodged inside the house.

**{¶22}** Anderson maintained that the violations of departmental policies did not rise to the level of recklessness because the circumstances did not demonstrate a perverse disregard of the risks involved. Anderson argues that she did not intend to cause harm and did not breach a departmental policy through ill will, malicious purpose, in bad faith, with a dishonest purpose or with an ulterior motive, and therefore, she is entitled to immunity under R.C. 2744.03(A)(6).

**{¶23}** In opposition, plaintiff submitted tapes of the 911 calls, the depositions of Anderson, Andreas, dispatcher supervisor Vikki Milano, and the affidavit of expert lieutenant paramedic and active instructor Jay Northup. Plaintiff's evidence indicated that it took Anderson four minutes to check her email regarding protocol changes;[2] she did not follow long-standing protocol that requires the immediate dispatch of a first responder; that she provided Andreas with the wrong telephone number for mutual aid; stopped him as he attempted to look up the number for requesting an ambulance from

---

[2]This email provided in relevant part:

> If mutual aid is needed by our City for whatever reason (squad, engine, etc.) it will no longer be necessary to ask the OIC who to call. The Dispatcher will refer to the MABAS list in the SOP book to call for mutual aid, choosing the closest city. After the equipment is responding the Dispatcher will notify the OIC who is responding.

Garfield Heights; failed to verify that the appropriate responder was called; and failed to consult the MABAS system. Plaintiff's evidence also indicated that Anderson was aware that "a dispatcher is the vital link between the person in need of service and the medical attention or emergency service they require." She was also aware that "following procedures and protocols that you're trained in and instructed upon is essential to make sure that people don't suffer serious harm or death." Plaintiff therefore argued that there is a genuine issue of material fact regarding whether Anderson was reckless.

{¶24} The trial court, framing the issue in terms of departmental policy violations, and applying the analysis set forth in *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 37-38, concluded as follows:

> While this Court is aware that first responders cannot and should not be held to a level of perfection, this case does not present a simple set of facts where a single instance of negligence occurred. Rather, the course of conduct involves numerous acts, many of which were questionable at best. Defendant's knowledge that serious injury or death could result from the failure to follow established procedures and protocols taken with the numerous apparent missteps and delays precludes this Court from finding a lack of recklessness as a matter of law. The series of apparent missteps and delays gives rise to legitimate and genuine issues of material fact that should be determined by a jury after thorough review of the evidence and testimony concerning the disputed facts at issue.

{¶25} We concur with this analysis. The evidence presented in this matter was sufficient to establish a jury question regarding whether Anderson was reckless within the meaning of R.C. 2744.03(A)(6). Under these circumstances, summary judgment is inappropriate. *Accord Lyons*, 8th Dist. Cuyahoga No. 96336, 2011-Ohio-5501, ¶ 61-62.

**{¶26}** Further, insofar as Anderson asserts that she is entitled to summary judgment on plaintiff's claim for infliction of emotional distress, we note that this tort can be caused where one "who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if some bodily harm to the other results from it, for such bodily harm." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 374, 453 N.E.2d 666 (1983). Accordingly, the genuine issues of material fact regarding Anderson's recklessness likewise prevent her from obtaining summary judgment as to this claim for relief.

**{¶27}** The sole assignment of error is without merit.

**{¶28}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR