[Cite as *Doe v. Cleveland Metro. School Dist.*, 2012-Ohio-2497.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97177**

---

# JANE DOE, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# CLEVELAND METROPOLITAN SCHOOL DISTRICT, ET AL.

DEFENDANTS-APPELLEES

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CP CV-714388

**BEFORE:** E. Gallagher, J., Cooney, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** June 7, 2012

**ATTORNEY FOR APPELLANT**

William A. Carlin
Carlin & Carlin
29325 Chagrin Blvd.
Suite 305
Pepper Pike, Ohio    44122

**ATTORNEYS FOR APPELLEES**

**For City of Cleveland and
James Box**

Barbara Langhenry
Interim Director of Law
William F. Gibson
Assistant Director of Law
City of Cleveland
601 Lakeside Avenue, Rm. 106
Cleveland, Ohio    44114

**For Amer-I-Can Foundation
For Social Change**

Douglas L. Winston
Berger & Zavesky Co., LPA
1425 Rockefeller Building
614 West Superior Ave., #1425
Cleveland, Ohio    44113

EILEEN A. GALLAGHER, J.:

{¶1}  Plaintiff-appellant, Jane Doe, appeals the trial court's orders granting summary judgment in favor of defendant-appellee, James Box, and a motion to dismiss in favor of defendant-appellee, the city of Cleveland (the "City").  Appellant further appeals the trial court's order striking appellant's motion for summary judgment against the City.  We affirm.

{¶2}  Amer-I-Can is a private, nonprofit organization dedicated to assisting individuals, including at-risk youths, to take responsibility and be accountable for their lives.  Amer-I-Can implements its program in schools, prisons, juvenile facilities and youth development centers in a number of states across the country.  To teach its program, Amer-I-Can typically hires individuals who have been disregarded by mainstream society, due to their involvement in gang violence, to serve as "facilitators" — many of whom have been previously convicted of felonies.

{¶3}  Prior to 2006, while Amer-I-Can was anticipating receipt of a federal grant relating to the Cleveland area, Box, an employee on the City's Community Relations Board and occasional consultant for the Amer-I-Can program, selected and trained eight individuals to become facilitators of the program in advance of the anticipated grant. Box had been involved with the Amer-I-Can program since 1990 and was paid on a per job contract basis by Amer-I-Can.

**{¶4}** All eight of the facilitators, including Jamill McDonald,[1] had felony convictions that Box was aware of at the time. Prior to Ameri-I-Can hiring these individuals, however, background checks were performed to see if the applicants met the requisite criteria to serve as facilitators in schools, which meant they could not have any sex crime or domestic violence convictions. The facilitators received domestic violence and sexual harassment training.

**{¶5}** In February 2006, Amer-I-Can received a $300,000 federal grant through the City to implement its program in an "Empowerment Zone," which included certain Cleveland schools. One of the schools in which the Amer-I-Can program was implemented was George Washington Carver Elementary School where appellant was a student in the eighth grade.

**{¶6}** After the grant was received, the Urban League of Greater Cleveland was eventually designated as the "managing service organization" in charge of the day-to-day operations and decision-making regarding the implementation of the Amer-I-Can program in the Cleveland schools. The Urban League did not consult Box regarding day to day operations. The City's remaining involvement with the program was through Box, who was appointed by Mayor Campbell to act as the City's "liaison" to the program. As the liaison, Box's duties consisted of overseeing the operation of the program by going to the schools "to see how things were going from time to time" and

---

[1]McDonald had been convicted of aggravated robbery for which he served three years in prison. (McPike Dep. Tr. 21:15-17).

meeting with each principal to make sure "everything was going well" but he did not have any "hands on" involvement with the program. He was also the employee at the City whom the involved parties contacted regarding any problems they were having with the program. Box did not facilitate the implementation of Amer-I-Can's program in the schools and any authorization or decision regarding this implementation "was above [him]." Furthermore, Box was not paid by Amer-I-Can for any of his work as the City's liaison to the program.

{¶7} Appellant reported that she had been sexually assaulted by Jamill McDonald in June of 2006. Appellant had graduated in May but she had been a student in the class wherein McDonald served as facilitator of the Amer-I-Can program. McDonald initially contacted appellant through a cell phone number that appellant had provided. McDonald was charged with rape, gross sexual imposition, kidnapping and unlawful sexual conduct with a minor based upon Jane Doe's allegations. McDonald ultimately pled guilty to sexual imposition, a third degree misdemeanor, with a Tier I sex offender classification.

{¶8} As a result of the foregoing, appellant brought suit against the City and Box, along with other parties, alleging that they were negligent and/or reckless by allowing this program through which convicted felons interacted with students in the City schools. On November 10, 2010, the trial court granted a motion to dismiss filed by the City and based on immunity pursuant to R.C. Chapter 2744. Appellant appealed this decision, which we dismissed for lack of a final appealable order pursuant to R.C.

2505.02 and Civ.R. 54(B). On July 27, 2011, the trial court granted summary judgment in favor of Box based on immunity. The trial court also granted the City's motion to strike a subsequent motion for summary judgment filed by appellant against the City, because the City had already been dismissed from the case. This appeal followed.

{¶9} Appellant's first assignment of error states: "The trial court erred when it granted defendant James Box's motion for summary judgment and ruled that Box had immunity pursuant to section 2744.03(A)(6)."

{¶10} Our review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ. R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.,* 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club,* 82 Ohio St.3d 367, 696 N.E.2d 201 (1998). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

{¶11} Appellant maintains that the trial court improperly granted Box's motion for summary judgment because, she asserts, there remained genuine issues of material fact as to whether Box should be held liable for reckless conduct pursuant to R.C.

2744.03(A)(6), which provides:

> (A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
>
> * * *
>
> (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
>
> * * *
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶12}  Appellant argues that a genuine issue of material fact exists as to whether Box's conduct as the City's liaison to the Urban League and the Amer-I-Can program was reckless.

> An actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.  *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, at ¶ 73.

{¶13} "Distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk." *Id.* "Recklessness, therefore, necessarily requires something more than mere negligence. In fact, the actor must be conscious that his conduct will in all probability result in injury." (Internal citations omitted.) *Id*. at ¶ 74.

{¶14} Moreover, "although the determination of recklessness is typically within the province of the jury, the standard for showing recklessness is high, so summary judgment can be appropriate in those instances where the individual's conduct does not demonstrate a disposition to perversity." *Id.* at ¶ 75.

{¶15} In the present case, the record is devoid of evidence that Box's conduct rose to the level of recklessness. Therefore, summary judgment was appropriate. This court is not condoning the decision to invite convicted felons and students to interact in a mentor-like relationship within a school setting and with uncertain supervision. This decision, however, was not Box's decision. The decision to introduce the Amer-I-Can program at George Washington Carver Elementary School may have been reckless, but an employee merely carrying out his duties in accordance with an established plan to implement the program is certainly not.

{¶16} The record fails to provide any evidence to suggest that Box was the "point man for the implementation of this program into the school district" as appellant claims. On the contrary, whoever this "point man" may be, the record reflects that such person was above Box in the decision-making hierarchy. Box was appointed by Mayor

Campbell to serve as the City's liaison for the program given his past involvement with Amer-I-Can and his understanding of the program. The record contains no evidence to suggest that he carried out those duties recklessly or that he became aware of any further risk in the course of these duties prior to learning of the subject incident involving appellant.[2] Further, even though Box trained the individuals from a pool of applicants and selected eight of them to be facilitators for this program, in doing so he followed Amer-I-Can's guidelines for screening applicants and had background checks performed to ensure that the individuals met the program's requisite criteria. Although every individual he selected had a felony record, the essence of the program, at the time, was to have those who had been involved with law enforcement and gang violence serve as facilitators to convince young people not to stray down this wayward course.

{¶17} Therefore, even though Box selected and trained a group of convicted felons to act as facilitators and acted as the City's liaison to the Urban League as it implemented the Amer-I-Can program, his conduct does not demonstrate a perverse disregard of a known risk because he personally did not authorize the implementation of the program into the Cleveland schools but rather carried out the duties imposed upon him by Mayor Campbell in accordance with this implementation.

---

[2]The record contains mention of another alleged sexual assault involving a Peace Squad member of Amer-I-Can and a female student. There is no indication in the record, however, that Box was aware of this allegation before he became aware of the subject incident. It is also unclear whether this accused individual was a part of this particular program. Furthermore, even if this court were to assume that Box was aware of the prior incident and the accused was a member of the program, there is no evidence that Box acted or failed to act, with a perverse disregard in handling this information, in his capacity as liaison.

{¶18}   Accordingly, appellant's first assignment of error is overruled.

{¶19} Appellant's second assignment of error states:   "The trial court erred when it granted defendant, city of Cleveland's motion to dismiss based on immunity."

{¶20}   "A motion to dismiss for failure to state a claim upon which relief can be granted * * * tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). A motion made under Civ.R. 12(B)(6) only determines whether the pleader's allegations set forth an actionable claim; indeed, a court "may not use the motion to summarily review the merits of the cause of action."   *Ward v. Graue*, 12th Dist. No. CA2011-04-032, 2012-Ohio-760, ¶ 9.

{¶21}   In order to prevail on a Civ.R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling plaintiff to recover.  *Hester v. Dwivedi*, 89 Ohio St.3d 575, 733 N.E.2d 1161 (2000). A court is confined to the averments set forth in the complaint and cannot consider outside evidentiary materials.  *Id*.   Moreover, a court must presume that all factual allegations set forth in the complaint are true and must make all reasonable inferences in favor of the nonmoving party.  *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 532 N.E.2d 753 (1988).   Therefore, "as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss."   *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991).

**{¶22}** We review the trial court's decision granting a motion to dismiss under a de novo standard of review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

**{¶23}** In determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744, a three-tiered analysis is required. *Lyons v. Teamhealth Midwest Cleveland*, 8th Dist. No. 96336, 2011-Ohio-5501.

> "The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B) * * *.
>
> "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. * * *
>
> "If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability. *Id.* at ¶ 23-25, quoting *Cramer v. Auglaize Acres*, 113 Ohio St. 266, 2007-Ohio-1946, 865 N.E.2d 9.

**{¶24}** Beginning with the first tier, the City is generally immune from liability. R.C. 2744.02(A)(1) provides:

> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. *Except as provided in division (B)* of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political

subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. *Id.* at 30.

**{¶25}** Proceeding to the second tier, appellant argues that the relevant exception in R.C. 2744.02(B) implicated by this case is R.C. 2744.02(B)(2), which provides that political subdivisions are liable for "negligent performance of acts by their employees with respect to *proprietary functions * * * ."* Appellant asserts she sufficiently pled facts in her complaint to demonstrate that the City's conduct in this case constituted a proprietary, as opposed to a governmental function, and that the City's employee, Box, performed his duties negligently. If appellant is incorrect, R.C. 2744.02(A)(1)'s grant of general immunity is not defeated and we must affirm the judgment of the trial court as none of the other exceptions in R.C. 2744.02(B) are applicable to the present case.

**{¶26}** "The mutually exclusive definitions of 'governmental function' and 'proprietary function' are set out in R.C. 2744.01. R.C. 2744.01(C)(2) lists specific functions expressly designated as governmental functions, and R.C. 2744.01(G)(2) lists specific functions that are expressly designated as proprietary functions." *Greene Cty. Agricultural Soc. v. Liming,* 89 Ohio St.3d 551, 557, 2000-Ohio-486, 733 N.E.2d 1141. The activities of the City at issue in the present case do not fall explicitly within either R.C. 2744.01(C)(2) or 2744.01(G)(2). Therefore, to classify the City's activities, we look to R.C. 2744.01(C)(1)'s definition of "governmental function" and R.C. 2744.01(G)(1)(b)'s definition of a "proprietary function." *Id.*

**{¶27}** R.C. 2744.01(C)(1) provides that a governmental function is one that

satisfies any of the following tests:

(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

(b) A function that is for the common good of all citizens of the state;

(c) A function that promotes or preserves the public peace, health, safety or welfare [and] that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons * * *. R.C. 2744.01(C)(1); *Id.*

{¶28} On the other hand, R.C. 2744.01(G)(1)(b), defines a "proprietary function" as a function that "promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons."

{¶29} This court has previously held that

"R.C. 2744.01(C) does not exclude from the definition of governmental functions those functions sometimes performed by private entities for political subdivisions. In fact, many of the specifically enumerated governmental functions set forth in R.C. 2744.01(C)(1) are commonly performed by private entities for political subdivisions * * *." *Lyons*, 8th Dist. No. 96336, 2011-Ohio-5501, at ¶ 46, quoting *McCloud v. Nimmer*, 72 Ohio App.3d 533, 595 N.E.2d 492 (8th Dist.1991).

"Essentially, if the activity is one customarily engaged in by nongovernmental persons, then the activity is proprietary." *Ohio Bell Tel. Co. v. Leon Riley, Inc.*, 8th Dist. No. 94771, 2010-Ohio-5371, at ¶ 13.

{¶30} Another relevant factor in making the distinction between a governmental and proprietary function is:

"whether the act is for the common good of all the people of the state, or whether it relates to special corporate benefit or profit * * * [i]f the function being exercised is proprietary and in pursuit of private and

corporate duties, for the particular benefit of the [municipal] corporation and its inhabitants, as distinguished from those things in which the whole state has an interest, the city is liable." *Greene Cty. Agricultural Soc.,* 89 Ohio St.3d at 558-559, 2000-Ohio-486, 733 N.E.2d 1141, quoting *Wooster v. Arbenz*, 116 Ohio St. 281, 284-285, 156 N.E. 210 (1927).

**{¶31}** Therefore, the relevant question is whether appellant pled facts sufficient to demonstrate that the activities performed by the City were those customarily engaged in by nongovernmental persons that can be demonstrated by showing that the function was in pursuit of private and corporate duties for the City's benefit, as opposed to those things in which the whole state has an interest.

**{¶32}** Appellant, however, has failed to plead sufficient facts demonstrating that the City's activities in the instant matter were those customarily engaged by nongovernmental persons.

**{¶33}** Pertinent to the present issue, appellant alleged in her complaint that:

(¶7) The Defendant City of Cleveland * * * is a municipal corporation that, as part of its function, receives and disburses grants of money to various foundations * * *.

(¶21) Cleveland agreed to fund and support the implementation of [the program] and authorized the payment of approximately $300,000 in public funds for said purpose.

(¶22) Cleveland also agreed to provide program assistance as needed * * * via the city's Community Relations Board and also provided a Cleveland employee as the program liaison to assist with the day-to-day implementation of the program as needed.

(¶22) [sic] [James] Box, a Cleveland employee was designated as the liaison for the implementation of the program.

(¶23) Cleveland agreed, among other things, to support the program, provide support services, to provide use of space for "Life Skill Sessions",

[sic] to provide assignments for Peace Squad Facilitators when assistance was requested by District site administrators, and to have final approval of the District site activities and of the Peace Squad Facilitators participating in the program as part of the City Schools component of the City of Cleveland's Amer-I-Can Peace Squad Program.

(¶24)  The program called for the implementation of Peace Squad Facilitators, who acted as counselors, the majority of whom were previously convicted criminals, who were then directed into the School District sites, including George Washington Carver Elementary School where Jane Doe was an 8th Grader.

(¶30)  Despite the fact that the Memorandum of Understanding had not been executed, Cleveland, by and through its duly appointed agent, representatives and employees, decided that the program should be initiated and therefore implemented the program at George Washington Carver Elementary School commencing approximately February 1, 2005.

(¶31)  Defendants, Cleveland, the School District, Amer-I-Can, Mt. Sinai, and/or MSM accepted and/or recommended McDonald to participate in the Peace Squad Program and assigned him to be located within George Washington Carver Elementary School.

{¶34}  Appellant's complaint essentially alleges that the City's activities consisted of: authorizing the payment of public funds for the implementation of the program, providing general oversight and assistance to the program through one of its employees, and accepting and/or recommending an individual to participate in this particular program.  Certainly, the act of distributing grants for educational purposes and assisting and overseeing the program for which those funds were provided are those customarily engaged in by governmental persons.  In the present instance, the City's actions were not in pursuit of private or corporate duties for its particular benefit, but rather in the state's interest of education.  We cannot say that the alleged actions of the City were those customarily engaged in by non-governmental persons.  "As a general

proposition, it is not for courts to second-guess the wisdom of discretionary governmental choices, troubling though they may sometimes seem in the glaring clarity of hindsight." *Yvonne Haddock v. New York*, 75 N.Y.2d 478, 486, 553 N.E.2d 987 (1990).

{¶35} Accordingly, the City retained its immunity pursuant to R.C. 2744.02(A)(1) and the trial court did not err by granting the City's motion to dismiss.

{¶36} Appellant's second assignment of error is overruled.

{¶37} Appellant's third and final assignment of error states: "The trial court erred when it granted the City of Cleveland's motion to strike Plaintiff's motion for summary judgment."

{¶38} A trial court's grant of a motion to strike is within the sound discretion of the court and will not be overturned unless the court abuses its discretion. *Tiburzi v. Adience, Inc.*, 8th Dist. No. 96591, 2012-Ohio-803, at ¶ 17, citing *Early v. Toledo Blade*, 130 Ohio App.3d 302, 318, 720 N.E.2d 107 (6th Dist.1998).

{¶39} The record reflects that the City's motion to dismiss had been granted prior to appellant filing a motion for summary judgment against the City. We find no abuse of discretion in the trial court's decision to strike appellant's motion for summary judgment against a party that had already been dismissed from the action.

{¶40} Appellant's third assignment of error is overruled.

{¶41} The judgment of the trial court is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
COLLEEN CONWAY COONEY, P.J., CONCURS
IN JUDGMENT ONLY