[Cite as *Booth v. Walls*, 2013-Ohio-3190.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HENRY COUNTY


SCOTT BOOTH, ET AL.,

    PLAINTIFFS-APPELLANTS,            CASE NO. 7-12-23

    v.

ERIN WALLS, ET AL.,                    O P I N I O N

    DEFENDANTS-APPELLEES.


Appeal from Henry County Common Pleas Court
Trial Court No. 10CV0174

Judgment Affirmed

Date of Decision:   July 22, 2013


APPEARANCES:

    *Kent D. Riesen and Dennis A. Lyle* for Appellants

    *J. Mark Trimble and David C. Bruhl* for Appellees

**ROGERS, J.**

{¶1} Plaintiffs-Appellants, Scott ("Scott") and Julie ("Julie") Booth, and their minor daughter, Morgan Booth ("Morgan") (collectively "the Booths"), appeal the judgment of the Court of Common Pleas of Henry County, granting summary judgment in favor of Defendants-Appellees, Erin ("Erin") and Kathy ("Kathy") Walls, and their minor children, Chance ("Chance") and Cassidy ("Cassidy") Walls (collectively "the Walls"). On appeal, the Booths contend that the trial court committed the following errors: (1) granting summary judgment based on an affirmative defense that the Walls did not plead, (2) granting summary judgment in favor of the Walls on the basis that the claims against them were barred under the primary assumption of the risk doctrine; and, (3) finding that there was no genuine issue of material fact with respect to the claims of reckless conduct against Erin and Kathy. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On August 23, 2010, the Booths filed a complaint ("Original Complaint") against the Walls seeking recovery for damages stemming from injuries Morgan suffered when she was struck by the throwing arm of a clay target throwing machine ("target machine"), which, was owned by the Walls and installed on their property at the time of the accident. The Booths' Original Complaint asserted five claims: (1) common law premises liability; (2) common

law negligence; (3) negligent supervision; (4) "ultra hazardous conditions"; and (5) loss of consortium. (Docket No. 1, p. 5).

{¶3} On October 13, 2010, the Walls filed their answer ("Original Answer"), wherein they denied the allegations set forth in the Booths' complaint, and asserted three specific defenses: (1) the Booths were contributorily negligent; (2) the Booths failed to join necessary and indispensable parties to their action; and (3) the Booths failed to mitigate their damages. In addition to these specific defenses, the Walls also "reserve[d] the right to add to their answer and to rely on all affirmative defenses as may be hereafter disclosed by way of discovery." (Docket No. 11, p. 6).

{¶4} In addition to answering the Booths' Original Complaint, the Walls filed a counterclaim against Scott and Julie and a third-party complaint against their minor son, Nathan Booth ("Nathan"). In their counterclaim, the Walls asserted that Scott and Julie negligently supervised the activities of their children, and that Morgan's injuries were a direct and proximate result of their negligent supervision. As a result, the Walls sought "contribution and indemnification" from Scott and Julie in the event they are found liable. (*Id*. at p. 7). In their third-party complaint, the Walls asserted that Nathan negligently operated the target machine, and that Morgan's injuries were a direct and proximate result of Nathan's negligent operation of the target machine. As a result, the Walls sought

"contribution and indemnification" from Nathan in the event they are found liable. (*Id*. at p. 8).

{¶5} On November 30, 2010, the Booths filed their answer to the Walls' counterclaim. On December 10, 2010, Nathan filed his answer to the Walls' third-party complaint.

{¶6} On November 30, 2011, the Booths moved for leave to file an amended complaint, which the trial court granted. The Booths filed their amended complaint ("Amended Complaint") on December 28, 2011. In it, the Booths reasserted all of their original claims, with the exception of "ultra hazardous conditions." The Booths also narrowed the scope of two of their original claims. First, the Booths limited their claim of premises liability to Erin and Kathy. Second, the Booths limited their claim of common law negligence to Chance and Cassidy. Finally, The Booths asserted two new claims against the Walls: (1) negligent entrustment; and, (2) recklessness.

{¶7} On January 12, 2012, the Walls filed their answer to the Amended Complaint ("Second Answer") in which they denied the allegations set forth in the Booths' Amended Complaint. The Walls' Second Answer also asserted five specific defenses. Three of the defenses were asserted in the Walls' Original Answer, to wit: contributory negligence, failure to join necessary and indispensable parties, and failure to mitigate damages. In addition to these

defenses, the Walls asserted that the Booths' claims were barred because the "[Booths] were recreational users", and that the Booths' amended complaint "fails to bring lawful claims pursuant to Civil Rule 11 and R.C. 2323.51[.]" (Docket No 46, p. 15). Further, the Walls again "reserve[d] the right to add to their answer and to rely on all affirmative defenses as may be hereafter disclosed by way of discovery." (*Id.*). Finally, and in addition to answering the Booths' Amended Complaint, the Walls reasserted their counterclaim against Scott and Julie, as well as their third-party complaint against Nathan.

{¶8} On January 25, 2012, the Booths filed their answer to the Walls' counterclaim. On February 17, 2012, Nathan filed his answer to the Walls' third-party complaint.

{¶9} During discovery, everyone present at the Walls' residence on the day of the accident was deposed. The following relevant evidence was adduced during the depositions.

{¶10} In 2007, the Walls purchased a parcel of land located at M235 County Road 2, McClure, Ohio ("the McClure property"). The property is bordered by farmland and a road, and features a residence with an attached garage, several outbuildings, and a pond. Subsequent to purchasing the McClure property, but prior to Morgan's accident, Erin installed a metal pole on his property near the pond. Erin then affixed a clay target throwing machine onto the metal pole. As a

result, the bottom of the target machine was elevated approximately three feet off the ground. According to Erin, he placed the target machine on the pole so that the clay targets would clear the pond on his property. To operate the target machine an individual must cock the throwing arm back till it locks in place, load a clay target in the throwing arm, and pull a string to release the throwing arm, which, consequently, swings forward and launches the clay target into the air.

{¶11} On August 24, 2008, Scott, Morgan, and Nathan traveled to the Walls' residence for a cookout.[1] Shortly after arriving, Kathy suggested that the children, including Chance and Cassidy,[2] trap shoot using the target machine installed on the Walls' property. All of the children had some experience shooting trap and were familiar with how the Walls' target machine operated. Despite the children's experience, Kathy testified that she instructed the children on how to safely operate the target machine.[3] In particular, Kathy recalled instructing the children to never walk away from the target machine when the throwing arm was cocked and never stand in front of the target machine.

{¶12} During the cookout, Scott, Morgan, Nathan, Chance, and Cassidy each took turns shooting trap. Scott shot for a short period of time. After he finished shooting, Scott retired to the Walls' garage where he and Erin watched

---

[1] On the day of the accident, Morgan and Nathan were 14 and 11 years old, respectively.

[2] On the day of the accident, Chance and Cassidy were 14 and 13 years old, respectively.

[3] Chance and Cassidy each confirmed that Kathy instructed all of the children how to safely operate the target machine. No such testimony was elicited from either Morgan or Nathan during their depositions.

NASCAR. All of the parents consumed beer prior to the accident. In particular, Erin testified that Scott had 10-12 beers before the accident, while Kathy testified that she had two. Kathy, however, maintained that none of the parents were intoxicated at the time the accident occurred. From their location in the garage, Scott and Erin could observe the children shooting. While Scott and Erin were watching NASCAR, Kathy was preparing the food. Although Kathy was busy preparing food for the cookout, she testified that she watched the children shoot for a majority of the activity.

{¶13} The children shot trap for approximately one hour. Accounts of who operated the target machine varied. According to Morgan and Nathan, neither of them cocked the throwing arm, loaded it, or pulled the string to release it. Instead, both testified that Chance and Cassidy exclusively operated the target machine. Chance and Cassidy acknowledged that they operated the target machine, but did not do so exclusively. Moreover, Chance and Cassidy testified that Nathan operated the target machine on several occasions. Nevertheless, both also agreed that Morgan never operated the target machine on the day of the accident. Kathy, on the other hand, testified that all of the children took turns operating the target machine.

{¶14} When the food was ready, the children ceased shooting. Before the children ate, they stored their guns in the garage and returned outside to gather

unbroken clay targets and spent shells. Accounts of who participated in the clean-up varied. According to Morgan and Nathan, all of the children went into an adjoining field to gather unbroken clay targets and then returned to where they were shooting to gather spent shells. Conversely, Chance and Cassidy testified that Nathan did not accompany them and Morgan into the field. Though Cassidy did not recall where Nathan was while the rest of the children were in the field gathering unbroken clay targets, Chance testified that Nathan remained in the vicinity of the target machine.

{¶15} The accident occurred while the children were gathering spent shells around the target machine. Each child testified that they did not realize that the target machine's throwing arm was cocked while they were gathering spent shells. Similarly, each child, as well as their parents, testified that they did not know who last cocked the throwing arm before the accident. Immediately prior to the accident, Morgan, Chance, and Cassidy were standing in front of and to the side of the target machine gathering spent shells, while Nathan stood behind the target machine. As the children were gathering spent shells, Morgan and Kathy observed Nathan playing with the string used to trigger the throwing arm. Despite their observations, neither of them said anything to Nathan. Nathan's actions subsequently caused the throwing arm to release. The throwing arm narrowly missed Chance and struck Morgan, who was standing in front of the target

machine gathering spent shells, in the face. At the time of the accident all of the parents were in the garage, and none of them observed the accident. Due to the severity of her injury, Morgan was taken to the hospital and has since undergone several surgeries.

{¶16} On January 30, 2012, the Walls filed a motion for summary judgment. In it, the Walls expressly argued that the Booths could not recover on their claims of negligence because they (the Walls) are immune from liability under R.C. 1533.181, the recreational user immunity statute. The Walls also indirectly argued that recovery was barred under the primary assumption of the risk doctrine. The Walls further argued that there were no genuine issues of material fact concerning the Booths' claims of recklessness, and that, as a matter of law, none of their actions were reckless.

{¶17} Attached to the Walls' motion for summary judgment was a picture of the target machine that injured Morgan, as well as affidavits of Cassidy and Chance Walls. Cassidy's and Chance's affidavits contained the following averments: (1) they, Morgan, and Nathan were each shooting clay pigeons on the day Morgan was injured; (2) after running out of clay pigeons, they and Morgan left the area where the target machine was located and proceeded into the field to collect unbroken clay pigeons; (3) Nathan remained near the target machine when they and Morgan went into the field; (4) the target machine's throwing arm was

not cocked when they went into the field; (5) after collecting clay pigeons in the field, they proceeded to pick-up empty shell casings near the target machine; (6) Morgan was injured while picking up shell casings; and, (7) neither of them cocked the throwing arm.

{¶18} On February 23, 2012, the Booths filed a memorandum in opposition to the Walls' motion for summary judgment. In it, the Booths first addressed the scope of the Walls' arguments in support of their motion for summary judgment. Specifically, the Booths noted that the Walls appeared to argue that the claims of negligence were barred under the primary assumption of the risk doctrine. The Booths argued that the Walls could not assert that defense since it was not pleaded, and "reserve[d] the right to later respond in the event [the Walls] later assert[ed] [the] defense." (Docket No. 68, p. 3). Thereafter, the Booths argued that the immunity provision under R.C. 1533.181 does not apply, and that there are genuine issues of material fact concerning their claims of recklessness.

{¶19} On March 12, 2012, the Walls filed a reply to the Booths' memorandum in opposition. In relevant part, the Walls expressly argued that the primary assumption of the risk doctrine bars the Booths' claims of negligence.

{¶20} On March 23, 2012, the Booths filed a sur-reply. In relevant part, the Booths claimed that the "[Walls] did not raise an assumption of risk argument in their Motion for Summary Judgment." (Docket No. 76, p. 9). As a result, the

Booths' asserted that "the court should dismiss any defense relating to assumption of risk[.]" (*Id.*) Notwithstanding this assertion, the Booths proceeded to address the application of the primary assumption of the risk doctrine. In doing so, they argued that the defense does not bar their claims of negligence because Morgan was injured after the recreational activity had ceased, and that being struck by the arm of the target machine is not an inherent risk of cleaning up the area around the target machine.

{¶21} On April 2, 2012, the Walls filed a response to the Booth's sur-reply. In relevant part, the Walls argued that the primary assumption of the risk doctrine was properly before the trial court for two reasons. First, the Walls noted that they raised the defense in their motion for summary judgment. Second, the Walls noted the similarity between the immunity provision under R.C. 1533.181 and the primary assumption of the risk doctrine.

{¶22} On April 13, 2012, the trial court filed its opinion addressing the Walls' motion for summary judgment. In it, the trial court found that "[t]here remains a genuine issue of fact as to whether the property being used was residential or nonresidential for purposes of the recreational immunity statute, [R.C. 1533.181]." (Docket No. 78, p. 4). Consequently, the trial court declined to grant summary judgment on that basis.

{¶23} Next, the trial court considered whether the Booths' claims of negligence were barred under the primary assumption of the risk doctrine. As an initial matter, the trial court considered whether the defense was properly raised by the Walls. The trial court noted that Walls did not "expressly set forth primary assumption of the risk as a defense" in their pleadings. (*Id.*). Despite this fact, the trial court determined that it could consider the defense because: (1) the Walls "reserve[d] the right * * * to add and raise any defense which may be revealed by way of discovery" in their pleadings; (2) the Walls cited to *Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990), a seminal case involving primary assumption of the risk, in their motion for summary judgment; and, (3) the Booths argued against the application of the defense. (*Id.*).

{¶24} Having determined that it could consider the affirmative defense of primary assumption of the risk, the trial court proceeded to consider whether the Booths' claims of negligence were barred by the defense. The trial court found that "[a]fter construing the evidence in a fashion most strongly in the [Booths'] favor * * * reasonable minds can come to but one conclusion. That conclusion is that Morgan Booth was engaged in a recreational activity when she was injured[,] and[, as a result,] any claims of negligence against the [Walls] cannot be sustained."[4] (*Id.* at p. 5).

---

[4] We note that the trial court did not expressly address whether being hit by the target machine's throwing arm was an inherent risk of cleaning the area surrounding the target machine.

**{¶25}** Finally, the trial court considered whether there were any genuine issues of material fact concerning the Booths' claims of recklessness. With respect to Chance and Cassidy, the trial court found that their actions do not "rise to the level of reckless disregard[.]" (*Id*. at p. 6). As a result, the trial court concluded that there were no genuine issues of material fact concerning the Booths' claims of recklessness against Chance and Cassidy. With respect to Erin and Kathy, the trial court noted that the "[Booths] base much of their reckless claim on the fact that Erin Walls and Kathy Walls consumed alcohol." (*Id*. at p. 7). The trial court, however, found that "nothing in the record * * * links the alcohol consumption to a specific act or failure to act that would rise to the level of * * * reckless conduct." (*Id*.). As a result, the trial court concluded that there were no genuine issues of material fact concerning the Booths' claims of recklessness against Erin and Kathy.

**{¶26}** On May 14, 2012, the trial court filed its judgment entry granting summary judgment in favor of the Walls.

**{¶27}** On June 7, 2012, the matter was appealed to this court. On June 19, 2012, this court found that the judgment entry was a non-final order, and therefore dismissed the appeal for want of jurisdiction.

**{¶28}** On June 28, 2012, the Booths filed a motion seeking reconsideration of the trial court's April 13, 2012 opinion and the corresponding May 14, 2012

judgment entry. Specifically, the Booths sought reconsideration of the trial court's determination that their claims of negligence were barred under the primary assumption of the risk doctrine. The Booths argued that since the Walls failed to appropriately plead that affirmative defense, the trial court was precluded from considering the same. As a result, the Booths requested that the trial court reconsider its decision, without consideration of the primary assumption of the risk doctrine.

{¶29} On July 9, 2012, the Walls filed a motion for leave to file an amended answer to the Booths' Amended Complaint. On July 10, 2012, the trial court granted the Walls' motion for leave. That same day, the Walls filed their amended answer ("Amended Answer"). In addition to reasserting the defenses contained in their Second Answer, the Walls asserted, for the first time, that the Booths' "claims are barred by the doctrine of primary assumption of the risk." (Docket No. 86, p. 15).

{¶30} On July 19, 2012, the Booths filed a motion seeking reconsideration of the trial court's decision to grant the Walls leave to file their Amended Answer. In it, the Booths' advanced two arguments in support of their motion for reconsideration. First, the Booths argued that the trial court abused its discretion when it granted the Walls' motion for leave without affording them sufficient time to respond to the Walls' motion for leave. Second, the Booths argued that the

Walls' motion for leave is untimely, and therefore should be denied. That same day, the trial court denied the Booths' motion for reconsideration.

{¶31} On September 25, 2012, the Walls filed a renewed motion for summary judgment ("Renewed Motion for Summary Judgment"). In it, they reasserted the arguments contained in their original motion for summary judgment, their reply to the Booths' memorandum in opposition, and their response to the Booths' sur-reply.

{¶32} On October 3, 2012, the Booths filed a memorandum in opposition to the Walls' renewed motion for summary judgment.

{¶33} On October 15, 2012, the Walls filed a reply to the Booths' memorandum in opposition to their renewed motion for summary judgment.

{¶34} On November 2, 2012, the trial court granted summary judgment in favor of the Walls, and dismissed the Walls' counterclaim against the Booths and their third-party complaint against Nathan.[5]

{¶35} The Booths filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED WHEN IT GRANTED THE DEFENDANTS-APPELLEES' MOTION FOR SUMMARY**

---

[5] As a matter of course, we note that the trial court did not rule on the Booths' motion for reconsideration filed on June 28, 2012. When a trial court fails to rule on a motion, the appellate court will presume the trial court overruled the motion. *Seff v. Davis*, 10th Dist. No. 03AP-159, 2003-Ohio-7029, ¶ 16. Consequently, we presume that the trial court overruled the Booths' motion for reconsideration.

**JUDGMENT BASED ON AN AFFIRMATIVE DEFENSE WHICH HAD NOT BEEN PLED.**

*Assignment of Error No. II*

**ASSUMING ARGUENDO THAT THE ASSUMPTION OF THE RISK DEFENSE WAS TIMELY RAISED, SUMMARY JUDGMENT SHOULD NOT HAVE BEEN GRANTED.**

*Assignment of Error No. III*

**THE TRIAL COURT ERRED WHEN IT FOUND THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE CLAIMS OF RECKLESS CONDUCT AGAINST THE DEFENDANTS-APPELLEES ERIN WALLS AND KATHY WALLS.**

*Assignment of Error No. I*

{¶36} In their first assignment of error, the Booths contend that the trial court erred when it granted summary judgment in favor of the Walls based on an affirmative defense they did not plead, i.e., primary assumption of the risk. We disagree.

*Pleading Affirmative Defenses*

{¶37} Civ.R. 8(C) governs the pleading of affirmative defenses and provides, in relevant part, that "[i]n pleading to a preceding pleading, a party *shall* set forth affirmatively * * * assumption of risk * * *." (Emphasis added.). "Assumption of risk" includes primary assumption of the risk. *See Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, fn. 3 (1996) (suggesting that the phrase "assumption of risk" in Civ.R. 8(C) encompasses primary assumption

of the risk); *see also Harris v. Armco Steel Corp.*, 5th Dist. No. 94-CA-28-2 (Aug. 18, 1994). Consequently, primary assumption of the risk is an affirmative defense.

{¶38} "Affirmative defenses other tha[n] those listed in Civ.R. 12(B) are waived if not raised in the pleadings or in an amendment to the pleadings." *Jim's Steak House, Inc., v. Cleveland*, 81 Ohio St.3d 18, 20 (1998), citing Civ.R. 8 and 15. Primary assumption of the risk is not listed in Civ.R. 12(B). Therefore, in order for the Walls to avoid waiver of the defense, they must have either raised the defense in their pleadings, pursuant to Civ.R. 8(C), or in an amendment to their pleadings, pursuant to Civ.R. 15. *Id*.

{¶39} Civ.R. 15 governs the amendment of pleadings. Under the provisions of the rule, "an answer [may] be amended once 'as a matter of course' within [28] days after it is served, provided that the action has not been placed on the trial calendar. Thereafter, an answer may only be amended with the written consent of an adverse party or after obtaining leave of court." *Hoover v. Sumlin*, 12 Ohio St.3d 1, 4 (1984), modified on other grounds by *Jim's Steak House, supra*, citing Civ.R. 15(A). Whenever a party requests leave for an amendment, trial courts should "freely give[]" it "when justice so requires." Civ.R. 15(A).[6] Since Civ.R. 15(A) "allows for liberal amendment, the granting of such motion

---

[6] We note that Civ.R. 15(B) provides another means by which a party's pleadings may be amended. The rule provides, in relevant part, that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Civ.R. 15(B). The rule, however, only applies where the matter has proceeded to trial. *E.g.*, *Miller v. Lima*, 3d Dist. No. 1-83-57 (Aug. 23, 1985). Since this matter did not go to trial, the Walls answer could not be amended pursuant to Civ.R. 15(B).

should not be disturbed on appeal absent showing of bad faith, undue delay, or undue prejudice to the party who opposed the motion." *Billerman v. Moorman*, 3d Dist. No. 10-01-14 (Mar. 18, 2002).

**{¶40}** Here, the Walls did not expressly assert primary assumption of the risk as a defense in their Original Answer or their Second Answer. Rather, they did not specifically plead the defense until they filed their Amended Answer with leave of court. Nevertheless, primary assumption of the risk became a critical issue in this matter when the Walls filed their first motion for summary judgment.

**{¶41}** In their motion for summary judgment, the Walls cited *Shaner v. Smoot*, 7th Dist. No. 712 (Oct. 12, 2001), which extensively focuses on the primary assumption of the risk doctrine. Further, the Walls cited *Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990), which discusses, in depth, the defense of primary assumption of the risk as it applies to minors involved in recreational activities. The Booths responded by recognizing that the Walls "alluded to some other theories and defenses." (Docket No. 68, p. 3).

**{¶42}** Based on the parties' extensive discussion of primary assumption of risk in these pleadings, we find that starting with the first round of summary judgment proceedings, the Booths were on notice that the Walls intended to use the doctrine as a defense. Further, by this point in the proceedings, the parties had already developed a factual record on this issue through the depositions and other

discovery. As a result, when the Walls moved for leave to amend their answer, the Booths were neither caught by surprise nor were they precluded from developing a factual record that opposed the assumption of the risk defense. *See Hoover,* 12 Ohio St.3d at 6 (finding that the plaintiffs "were not prejudiced by the addition of the [affirmative] defense as they faced no obstacles by the amendment which they would not have faced had the original pleading raised the defense"). In light of these facts, we are unable to find that the trial court's granting of leave unfairly prejudiced the Booths. Moreover, the Booths have not argued how the Walls' request for leave was made in bad faith or caused undue delay. Consequently, we find that the trial court did not abuse its discretion by allowing the Walls to file the Amended Answer.

{¶43} Accordingly, we overrule the Booths' first assignment of error.

*Assignment of Error No. II*

{¶44} In their second assignment of error, the Booths argue that the trial court erred when it granted summary judgment for the Walls. Specifically, they contend that the assumption of the risk doctrine is inapplicable because the recreational activity had ceased at the time of injury, and the injury was not an inherent risk associated with the recreational activity. We disagree.

*Standard of Review*

**{¶45}** An appellate court reviews a summary judgment order de novo. *Hillyer v. State Farm Mut. Auto. Ins. Co.*, 131 Ohio App.3d 172, 175 (8th Dist. 1999). Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002-Ohio-3932, ¶ 25 (3d Dist.), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 222 (1994). Summary judgment is appropriate when, looking at the evidence as a whole: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In conducting this analysis the court must determine "that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, [the nonmoving] party being entitled to have the evidence or stipulation construed most strongly in the [nonmoving] party's favor." *Id.* If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

**{¶46}** The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of

material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support that argument. *Id.* at 292. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; and may not rest on the mere allegations or denials of the pleadings. *Id.*; Civ.R. 56(E).

*Negligence & Primary Assumption of the Risk*

{¶47} To prevail in a negligence action, the plaintiff must show that (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff to be injured. *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565 (1998). The existence of a duty in a negligence action is a question of law for the court to decide.[7] *Brewster v. Fowler*, 11th Dist. No. 99-T-0091 (Oct. 13, 2000) citing *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).

{¶48} Primary assumption of the risk is applied in cases where there is no duty owed by the defendant to the plaintiff. *See Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427 (1996); *Cincinnati Base Ball Club Co. v. Eno*, 112 Ohio St. 175 (1925). Whether to apply primary assumption of the risk is a matter of law for the court to decide. *Crace v. Kent State Univ.*, 185 Ohio App.3d

---

[7] The trial court did not consider whether the Walls owed a duty to the Booths and the Walls did not argue whether a duty existed in their Motion for Summary Judgment; therefore, we will not address the issue.

534, 2009-Ohio-6898, ¶ 12 (10th Dist.). Since "'a successful primary assumption of risk defense means that the duty element of negligence is not established as a matter of law, the defense prevents the plaintiff from even making a prima facie case.'" *Wolfe v. Bison Baseball Inc.*, 10th Dist. No. 09AP-905, 2010-Ohio-1390, ¶ 21, quoting *Gallagher*, at 432.

{¶49} In order to succeed on a primary assumption of the risk defense, it must be shown that (1) the danger is ordinary to the activity; (2) there is common knowledge that the danger exists; and (3) that the injury occurs as a result of the danger during the course of the activity. *Santho v. Boy Scouts of Am.*, 168 Ohio App.3d 27, 2006-Ohio-3656, ¶ 12 (10th Dist.). Thus, "[a] plaintiff who reasonably chooses to proceed in the face of a known risk is deemed to have relieved defendant of any duty to protect him." *Siglow v. Smart*, 43 Ohio App.3d 55, 59 (9th Dist. 1987). The courts have adopted this doctrine on the basis of "the notion that certain risks are so inherent in some activities that they cannot be eliminated." *Collier v. Northland Swim Club*, 35 Ohio App.3d 35, 37 (10th Dist. 1987).

### *Recreational Activity & Inherent Risk*

{¶50} Where individuals participate in recreational or sports activities, "they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or

'intentional.'" *Marchetti v. Kalish*, 53 Ohio St.3d 95, 100 (1990). "Whether the activity is organized, unorganized, supervised or unsupervised is immaterial to the standard of liability." *Id.* at 98. Clearly, target shooting is a recreational activity, which the Booths do not dispute. Instead, the Booths contend that the recreational activity of target shooting had ceased at the time of Morgan's injury, and also that her injury was not an inherent risk associated with target shooting.

{¶51} Looking at the facts in the light most favorable to the Booths, we find that the injury occurred during the course of the recreational activity and that the injury was a result of an inherent risk of target shooting. There is conflicting testimony whether the children had intended to stop shooting for the day or whether they had planned to return to shoot more clay pigeons at a later time. Assuming the children were done shooting for the day, the recreational activity was still ongoing at the time of Morgan's injury.

{¶52} The activity of target shooting did not abruptly end when the children finished shooting the clay pigeons. Several witnesses testified in their depositions that the activity was not over until the spent shells and clay pigeons were cleaned up and put away. For instance, Erin testified that it was normal to pick up the clay pigeons you missed and reuse them at a later time. Moreover, Chance testified that after the shooting is complete, it is typical to pick everything up and put the equipment away. Specifically, he elaborated that it was standard to first pick up

the clay pigeons and then to pick up the shells. Kathy also testified that when her family is done with target shooting that it is customary to detach the thrower off of the pole and to bring it inside. Morgan's injury occurred while they were picking up the spent shells around the target machine. Therefore, Morgan's injury occurred during the recreational activity.

{¶53} Further, the danger associated with the target machine arm is an inherent risk of target shooting. All the children testified they knew that the target machine could pose as a risk when the throwing arm was cocked. The inherent risk of being hit by the target machine's arm when it is cocked does not disappear just because the guns were put away. Rather, the risk is present so long as the target machine is operational, as it was at the time of Morgan's injury.

{¶54} "Under primary assumption of the risk, the injured plaintiff's subjective consent to and appreciation for the inherent risks are immaterial to the analysis." *Crace*, 185 Ohio App.3d 534, 2009-Ohio-6898, at ¶ 16. Although the primary assumption of the risk doctrine is objective, we note that in this matter, Morgan willingly decided to pick up shells near the target arm when it was still operational, knowing that the arm was still operational and presented a risk to her. Morgan admitted in her deposition that she has been around guns for most her life and that she has participated in trap shooting 3-4 times before the incident. She also stated in her deposition, that it is "pretty clear" when the arm of the target

machine is engaged and when it is not. (Morgan Dep., p. 21). Immediately before the incident happened, she noticed her brother playing with the string that released the arm and did not say anything. Based on these facts, we find that Morgan knowingly assumed the risk when she voluntarily participated in trap shooting and placed herself near the cocked arm of the target machine.

{¶55} Accordingly, we overrule the Booths' second assignment of error.

*Assignment of Error No. III*

{¶56} In their third assignment of error, the Booths contend that the trial court erred when it granted summary judgment in favor of the Walls because there was no genuine issue of material fact as to the claims of recklessness against the Walls.[8] We disagree.

{¶57} "Once the court determines that the [plaintiff] w[as] involved in a recreational activity, the court's focus must shift to the alleged reckless or intentional nature of the defendant's conduct." *Bastian v. McGannon*, 9th Dist. 07CA009213, 2008-Ohio-1449, ¶ 13. Reckless conduct differs from negligent conduct in that it requires a greater risk of harm to another person. *Doe v. Cleveland Metro. School Dist.*, 8th Dist. No. 97177, 2012-Ohio-2497, ¶ 12. "[A]lthough the determination of recklessness is typically within the province of the jury, the standard for showing recklessness is high, so summary judgment can

---

[8] The Booths originally alleged reckless conduct on behalf of Chance and Cassidy Walls yet abandoned that claim on appeal. Therefore, we will provide no discussion on whether Chance and Cassidy's actions were reckless.

be appropriate in those instances where the individual's conduct does not demonstrate a disposition to perversity." *Id.* at ¶ 14 *quoting O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 75.

**{¶58}** Here, we will not address whether the Walls' conduct was intentional as this issue has not been raised on appeal. Instead, the issue is whether the Walls acted recklessly, causing Morgan's injury. In resolving this issue, we find that the Booths have failed to set forth any evidence which would suggest that the Walls' conduct rose to the level of recklessness that is needed to escape the defense of primary assumption of the risk.

**{¶59}** The Booths rely heavily on a sworn affidavit from Brian Brewton, a target range operator, to show the Walls' recklessness, but it is unconvincing.[9] Brewton's affidavit states that the Walls had a duty to warn and instruct the children on the dangers of the target machine. However, the affidavit fails to take into account that the Walls performed this duty before the shooting began. Indeed, it is uncontested in the deposition testimony that Kathy Walls gave instructions to the children about the target machine and warned them to never step in front of the machine when the target arm was cocked.

---

[9] The Booths have offered an affidavit from a trap shooting "expert" who asserted that the Walls' actions satisfy the legal standard for recklessness. While the witness has some expertise in the operation of a trap shooting range, there is no indication that Brewton possesses the necessary information to determine the Booths' mental states and to opine as to the satisfaction of the legal standard for recklessness. *See Dieringer v. Sawmiller*, 3d Dist. No. 2-12-04, 2012-Ohio-4880, fn. 4 (noting that a medical expert is "unqualified" to offer an opinion as to the legal applicability of insurance policy provisions).

{¶60} Brewton's affidavit also states that the Walls acted "recklessly" by not supervising the Booth children more closely and that this was exacerbated by the Walls consuming alcohol during the day. The Walls' purported lack of supervision combined with the consumption of alcohol does not rise to the level of recklessness. *See Sebasta v. Holtsberry*, 5th Dist. No. 00CA00018 (Aug. 17, 2000) (finding that parents who let their child operate a boat and go tubing unsupervised were not reckless); *State v. Thompson*, 2d Dist. No. 16969 (Nov. 20, 1998) (finding no recklessness where the defendant was discovered by police passed out, surrounded by beer cans, and who smelled of alcoholic beverage and was unaware of how many children were under his supervision). It is undisputed that all the children using the target machine had grown up around guns and had experience in trap shooting. Despite the children's familiarity with trap shooting, Kathy still reminded the children about the dangers of the target machine and handed out safety goggles for their use.

{¶61} Further, any alleged misconduct by the Walls is lessened by the fact that Morgan's and Nathan's own parents were in the same vicinity as the Walls, and Scott was consuming the same amount of alcohol as Erin. Additionally, the Booths never objected to their children trap shooting unsupervised or to the consumption of alcohol on the premises. While all the parties could have acted more prudently that day, it cannot be said that the Walls behaved recklessly.

{¶62} Lastly, the Booths contend that raising the target machine three feet off the ground also contributed to the Walls' alleged recklessness. However, they offer no evidence to show how raising the target machine off the ground made the machine more dangerous for the children to use. Even Brewton's affidavit makes no mention of how the Walls' modifications to the target machine contributed to their alleged reckless behavior.

{¶63} Accordingly we overrule the Booth's third assignment of error.

{¶64} Having found no error prejudicial to the Booths in the particulars assigned and argued, we affirm the trial court's judgment.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**